UNITED STATES DISTRICT COURT
For the Northern District of California

# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| KARLA ASCENCIO et al., | No. C 12-04884 LB |
| Plaintiffs, | **ORDER FOR REASSIGNMENT; REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| ADRU CORP., | |
| Defendant. | [Re: ECF No. 10] |

## INTRODUCTION

Plaintiffs Karla Ascencio and Judith Allen sued ADRU Corporation for violations under the Americans with Disabilities Act ("ADA"), and related California statutes. Complaint, ECF No. 1.[1] Ms. Ascencio suffers from chronic pain syndrome, and is accompanied by a service dog when in public. *Id.* ¶ 5. In June 2012, Ms. Ascencio and her service dog, accompanied by Ms. Allen, Ms. Ascencio's mother, went to Defendant ADRU Corporation's Burger King restaurant on Taylor Street in San Francisco. Plaintiffs allege that they were forced to leave the restaurant and threatened with arrest because Ms. Ascencio was accompanied by her service dog, in violation of the ADA and California law. ECF. No. 1 at 7. Ms. Ascencio and Ms. Allen seek injunctive relief, damages, and attorney's fees. *Id.* at 25-27. Plaintiffs consented to the undersigned's jurisdiction but the defendant

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically generated page numbers at the top of the document.

C 12-04884 LB
ORDER; REPORT AND RECOMMENDATION

has failed to appear. *See* Plaintiffs' Consent, ECF No. 5. For the reasons stated below, the court **ORDERS** that this case be reassigned to a district court judge and **RECOMMENDS** that the district court grant Plaintiffs' motion for default judgment, enjoin ADRU, Corp., as provided below, and award $8,000 in statutory damages, $11,864 in attorney's fees, and $568 in costs.

**STATEMENT**

**I. FACTUAL ALLEGATIONS**

Plaintiff Karla Ascencio suffers from chronic pain syndrome, specifically chronic pain in her legs that also causes deep depression and anxiety. Complaint, ECF No. 1, ¶ 5. As a result of her chronic pain syndrome, Ms. Ascencio is a "person with physical disabilities" under the applicable California and United States laws. *Id.* Ms. Ascencio requires the use of a service dog to travel about in public. *Id.* The complaint quotes from an August 30, 2010 letter from Ms. Gloria Frederico, a Licensed Marriage and Family Therapist for the City and County of San Francisco Department of Public Health. *See id.* ¶ 5, Ex. A. In relevant part, Ms. Frederico states that:

> Karla Ascencio-Banda has been under my clinical care for the past three years for a disabling illness. Her disability produces symptoms of deep depression and anxiety. Ms. Ascencio-Banda's main social and emotional support comes from her two dogs, Blondy and Gaby. . . . It is my professional opinion that the ability to live with her dogs is crucial to Ms. Ascencio-Banda's mental health. Her dogs are a necessary part of treatment for Ms. Ascencio-Banda's disability. The dogs provide Ms. Ascencio-Banda service and assistance directly related to her disability.

*Id.* Plaintiff Judith Allen is Ms. Ascencio's mother. *Id.* ¶ 6.

Defendant ADRU Corp., is a California corporation doing business as Burger King #15775[2] ("ADRU" or "Burger King"), and is located at or near 2739 Taylor Street in San Francisco. *Id.* ¶ 9. Burger King is open to the general public and is a public accommodation under the applicable statutes. *Id.*

On or about June 29, 2012, at about 5:45 p.m., Ms. Ascencio and Ms. Allen went to Burger King. *Id.* ¶ 16. Ms. Ascencio was accompanied by her service dog, "Blondie." *Id.* ¶ 18. Ms. Allen was carrying Ms. Ascencio's second service dog, "Gabriell." *Id.* ¶ 19. At the time, both dogs were

---

[2] The court refers to this Burger King restaurant (as a location) as "Burger King" and Defendant ADRU, Corporation (as an entity) as "ADRU."

carrying out their duties as service dogs. *Id.* ¶¶ 18-19. ADRU employees refused to serve Ms. Ascencio and Ms. Allen because they were accompanied by the service dogs, ejected them from Burger King, and retaliated against them by calling the police and threatening them with arrest. *Id.*

Plaintiffs allege that ADRU's actions constitutes discrimination against Plaintiffs on the basis of Ms. Ascencio's physical disability and use of a service dog, and Ms. Allen's association with Ms. Ascencio. *Id.* ¶ 21. They allege that ADRU's actions interfered by Ms. Ascencio's use of a service dog, *id.* ¶¶ 18, 21, and Ms. Allen's right to access Burger King, *id.* ¶ 19. Further, ADRU's

> acts and omissions in maintaining a policy, procedures, and practices that excludes service animals, as stated herein, and refusal to allow plaintiff's service dog to accompany plaintiff KARLA ASCENCIO after the law was explained to defendant's employee and to defendant was tantamount to interference, coercion or intimidation purusant to § 503(b) (42 USC 12203).

*Id.* ¶ 22. Plaintiffs allege that ADRU violated their civil rights and caused them to suffer emotional distress.[3] *Id.* ¶¶ 30-31. The complaint alleges the following claims: (1) denial of access by a public accommodation in violation of the ADA, 42 U.S.C. § 12101 *et seq.*; (2) denial of full and equal access in violation of California Civil Code §§ 55, 54.1, 54.3 *et seq.*; (3) denial of full and equal accommodation in violation of California Civil Code § 51 *et seq. Id.* 15-24.

Plaintiffs' complaint asks for an award of statutory damages, attorney's fees and costs, and injunctive relief in the form of an order "compelling defendant to make the BURGER KING #15775 accessible to persons with disabilities accompanied by a service animal and those associated with them." *Id.* ¶ 35.

In their motion for default judgment, Plaintiffs ask the court to award damages of $20,000 to Ms. Ascencio and $9,500 to Ms. Allen. *See* Motion, ECF No. 10-1 at 5. At the December 19, 2013 hearing, however, Plaintiffs' counsel reduced his damages request to statutory damages of $4,000 per Plaintiff and said on the record (after the court recessed to allow him to talk with his clients) that his clients waived any damages beyond the statutory amounts. Plaintiffs also ask for $11,864 in

---

[3] The Complaint specifies that "[n]o claim is being made for mental and emotional distress over and above that ususally associated with the discrimination and physical injuries claimed, and no expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damges." *Id.* ¶ 31.

attorney and paralegal fees and $568 in costs. *See* Frankovich Decl., ECF No. 10-4, ¶ 8.[4]

**II. PROCEDURAL HISTORY**

Plaintiffs filed their complaint on September 18, 2012. *Id.* at 1. On October 22, 2012, Plaintiffs served ADRU. *See* Return of Service Executed, ECF No. 6 at 2. ADRU has not filed an answer or otherwise appeared in this matter. *See generally* Docket.

On November 12, 2013, the date the answer was due, Defendant sent a letter to Plaintiffs' counsel, stating that they believed they had done nothing improper and offering to settle the case for $2,000. Frankovich Decl., ECF No. 10-4, ¶ 6. The letter did not mention providing a policy to add service animals. *Id.* On November 27, 2012, Plaintiffs' counsel responded to Defendant's letter, stating that if no answer were filed by December 7, 2012, Plaintiffs would move for entry of default. *Id.* On December 19, 2012, Plaintiffs filed an entry of default. On December 27, 2012, the Clerk of the Court entered default as to ADRU. *See* Entry of Default, ECF No. 8.

The docket reflects that on September 16, 2013, the court ordered Plaintiffs to show cause why the action should not be dismissed for failure to prosecute because Plaintiffs had not moved for default judgment. Order to Show Cause, ECF No. 9. On September 23, 2013, Plaintiffs filed the pending motion for default judgment ("Motion") and noticed it for December 19, 2013, at 9:30 a.m. *See* ECF No. 10. Plaintiffs' counsel responded to the order to show cause with a letter that explained the delay. *See* ECF No. 11. Plaintiffs served Defendant with their motion. *See* ECF No. 10-6. On September 24, 2013, the court discharged the show cause order. *See* ECF No. 12. On December 19, 2013, the undersigned held a hearing on the motion for default judgment. Defendant did not appear.

**ANALYSIS**

**I. JURISDICTION AND SERVICE**

Before entering default judgment, a court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli,* 172 F.3d

---

[4] Plaintiffs' default judgment motion erroneously states that the attorney's fees and costs total $12,462. Motion, ECF No. 10-1 at 1. The Frankovich Declaration contains the correct calculations. *See* ECF No. 10-4, ¶ 8 (asking for $12,432).

707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007). Plaintiffs have satisfied all three requirements.

The court has subject-matter jurisdiction because Ms. Ascencio's claims arise under the Americans with Disabilities Act. *See* 28 U.S.C. § 1331. Because the court has federal question jurisdiction over the federal claims, it also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

The court has personal jurisdiction over ADRU because the Burger King it operates is in the Northern District of California.

Plaintiffs adequately served ADRU with the summons and the complaint in the Northern District of California. Federal Rule of Civil Procedure 4(h)(1)(B) allows for service on a corporation in a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer . . . or any other agent authorized by appointment or by law to receive service of process . . . ." Similarly, Rule 4(h)(1)(A) authorizes service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under California law, "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served." Cal. Civ. Proc. Code § 415.10. A summons can be served on a corporation by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. Cal. Civ. Proc. Code § 416.10(a). A summons also can be served on a corporation by delivering a copy of the summons and complaint to the president, chief executive officer, or other head of the corporation. Cal. Civ. Proc. Code § 416.10(b).

Here, Plaintiffs filed a proof of service indicating that a process server from D&T Legal Services personally served ADRU's agent for service and vice-president Joseph N. Rubin on October 22, 2012 at 4:00 p.m. with the summons, complaint, and other docket entries. ECF No. 6 at 2. Accordingly, based on the documents submitted, the court finds that Plaintiffs properly served ADRU Corporation. Plaintiffs also warned Defendant that they would seek default judgment and

served them with the pending motion. *See* Frankovich Decl., ECF No. 10-4, ¶ 6; ECF No. 10-6.

## II. DEFAULT JUDGMENT

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for – and the court may grant – a default judgment against a defendant who has failed to plead or otherwise defend an action. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Still, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *Draper* 792 F.2d at 924-25. Default judgments generally are disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Where the clerk has already entered default, the court must take as true the factual allegations of the complaint and other competent evidence submitted. *See Fair Hous. of Marin v. Coombs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

In deciding whether to enter a default judgment, the court should consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

### A. Possibility of Prejudice to the Plaintiff (First *Eitel* Factor)

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff militates in favor of granting a default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

Ms. Ascencio filed this action on September 18, 2012 and ADRU was served on October 22, 2012. According to Plaintiffs' counsel, ADRU made one settlement offer in November 2012, which Plaintiffs rejected and has not contacted Plaintiffs since. *See* Frankovich Decl. ¶ 6. ADRU did not respond to Plaintiffs' subsequent letter warning them about seeking default judgment. *Id.* Plaintiffs

also served ADRU with this motion. *See* ECF No. 10-6. Given ADRU's apparent unwillingness to litigate, if the court does not grant default judgment, Ms. Ascencio likely would be left without recourse. Accordingly, this factor weighs in favor of granting default judgment.

**B. Merits and Sufficiency of the Complaint (Second and Third *Eitel* Factors)**

The merits of Plaintiffs' claims and the sufficiency of the complaint favor entry of default judgment. The court addresses each of their claims in turn.

*1. Plaintiffs' ADA Claim*

Plaintiffs' complaint sufficiently alleges an ADA violation. Title III of the ADA prohibits discrimination by public accommodations. 42 U.S.C. §§ 12181 et seq. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a Title III discrimination claim, a plaintiff must show the following: (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant denied the plaintiff public accommodations because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).

The complaint alleges facts showing each of these elements. First, Plaintiffs allege that Ms. Ascencio is disabled within the meaning of the ADA, which defines a disability as including "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Plaintiffs allege that Ms. Ascencio suffers from chronic pain syndrome that also causes deep depression and anxiety, and the letter from Gloria Frederico, which is attached to and part of the complaint, bolsters this allegation.

Second, Plaintiffs allege that ADRU is a private entity that owns or operates a place of public accommodation. The ADA definition of "public accommodation" includes "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12181(7)(B). "To operate" a public accommodation means "to put or keep in operation, to control or direct the functioning of, or to conduct the affairs of, manage." *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 849

(9th Cir. 2004) (quoting *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (internal quotation marks omitted)). Plaintiffs allege that ADRU is a private entity that "owns and operates in joint venture" the Burger King restaurant at 2739 Taylor Street in San Francisco. *See* Complaint ¶¶ 9-10. Accordingly, the complaint sufficiently alleges this element.

Finally, the complaint alleges that ADRU denied Ms. Ascencio public accommodations because of her disability. The ADA prohibits certain discriminatory conduct when it relates to customers of a public accommodation, including the following:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

42 U.S.C.A. § 12182(B)(2)(A). Under applicable Department of Justice[5] regulations, a public accommodation generally must "modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). In addition, "[i]ndividuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go." *Id.* § 36.302(c)(7). Finally, the ADA also prohibits retaliation, interference, coercion, or intimidation against a person who challenges practices that are unlawful under the ADA, as follows:

> (a) Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

---

[5] The Department of Justice is charged with promulgating administrative regulations to implement Title III of the ADA. 42 U.S.C. §§ 12186(b); 12206(c)(3); *see Miller v. California Speedway Corp.*, 536 F.3d 1020, 1024 (9th Cir. 2008).

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(a)-(b).

Here, Ms. Ascencio alleges that ADRU employees refused to serve her, ejected her from Burger King, called the police, and threatened to have her arrested because of her physical disabilities and use of a service dog. Complaint ¶¶ 18-25. These factual allegations show that Ms. Ascencio's ADA claim is sufficiently pleaded under several different theories. Accordingly, the merits and sufficiency of the complaint weigh in favor of granting default judgment in Ms. Ascencio's favor on her ADA claim.

The result is the same for Ms. Allen. The ADA extend the same protections to those who are "associated" with a disabled person, providing:

It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

42 U.S.C.A. § 12182(b)(1)(E). Also, as quoted above, the prohibition on retaliation extends to "any individual" who opposes an act or practice that is unlawful under the ADA, and the prohibition on coercion protects a person who "aide[s] or encourage[s] any other individual" in asserting rights under the ADA. *See* 42 U.S.C. § 12203(a)-(b). Plaintiffs allege that by accompanying Ms. Ascencio into the Burger King, she was associated with Ms. Ascencio. Complaint ¶ 21. Accordingly, the merits and sufficiency of the allegations with regard to Ms. Allen weigh in favor of granting default judgment in her favor on Plaintiffs' ADA claim.

### *2. Plaintiffs' California Disabled Persons Act Claim*

Plaintiffs' second claim alleges that ADRU's actions violated California's Disabled Persons Act ("CDPA"), California Civil Code §§ 54, *et seq. See* Complaint ¶¶ 48-57. The Disabled Persons Act states:

Individuals with disabilities shall be entitled to full and equal access, as other members of the

general public, to accommodations, advantages, facilities, medical facilities, including ... private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Cal. Civ. Code § 54.1(a)(1). The CDPA provides that provides that "[e]very individual with a disability has the right to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1 without being required to pay an extra charge or security deposit for the guide dog, signal dog, or service dog." Cal. Civ. Code § 54.2(a). In addition, "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of" the CDPA. Cal. Civ. Code § 54.

The CPDA allows suits for interference with the right to access public accommodations, and provides for "actual damages and any amount as may be determined by a jury . . . up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees . . . suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2." Cal. Civ. Code § 54.3(a). A person aggrieved or potentially aggrieved under the CDPA also may bring an action to enjoin the violation and the prevailing party is entitled to reasonable attorney's fees. Cal. Civ. Code § 55.

As discussed above, Plaintiffs allege a violation of the ADA. Accordingly, they also have alleged a violation of the CDPA. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011) (finding CDPA and Unruh Act violations were predicated on ADA violation). Accordingly, this factor weight in favor of a default judgment on Plaintiffs' second claim.

### *3. Plaintiffs' Unruh Civil Rights Act Claim*

Plaintiffs' third claim arises under the Unruh Civil Rights Act, codified at section 51 of the California Civil Code. The relevant provision provides that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). As with the CDPA, Unruh Act liability may be premised on an ADA

violation. *See* Cal. Civ. Code § 51(f); *Moeller*, 816 F. Supp. 2d at 848.

Section 52(a) of the California Civil Code provides for actual and statutory damages, plus attorney's fees, for violations of section 51. Cal. Civ. Code § 52(a). Section 52(a) allows a plaintiff to recover "actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." *Id.*

Again, because Plaintiffs have sufficiently alleged ADA claims, their Unruh Act claims also are sufficient. In sum, the merits and sufficiency of the allegations in the complaint support granting Plaintiffs' motion for default judgment as to all three claims and both Plaintiffs.

**C. The Sum of Money At Stake (Fourth *Eitel* Factor)**

The fourth *Eitel* factor also weighs in favor of default judgment. When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, *3 (N.D. Cal. Jan. 8, 2010) (citing *Eitel*, 782 F.2d at 1472). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. C–10–2212 EMC, 2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (the sum of money for unpaid contributions, liquidated damages, and attorneys fees were appropriate as they were supported by adequate evidence provided by plaintiffs).

Here, Plaintiffs have not requested so burdensome or so large to deny the motion on this ground. Plaintiffs request $8,000 in damages ($4,000 each) and $12,462 in attorney's fees and costs. Accordingly, this factor supports default judgment.

**D. The Possibility of a Factual Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)**

Because ADRU has not presented a defense or otherwise communicated with the court despite being served by Plaintiffs, there is no indication that default is due to excusable neglect or that the

1 material facts are subject to dispute. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071-72 (D. Ariz. 2006). This factors weighs in favor of granting default judgment.

### E. Policy Favoring Decision on the Merits

Finally, although strong public policy favors decisions on the merits, *see Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985), it does not appear that litigation of the merits will be possible due to ADRU's refusal to litigate.

In sum, the court finds that all of the *Eitel* factors weigh in favor of granting the default judgment. The court recommends the district court grant Plaintiffs' motion for entry of default judgment.

## III. THE RELIEF SOUGHT

Plaintiffs request a judgment awarding injunctive relief, statutory damages, attorney's fees, and costs. *See* Motion, ECF No. 10. The court addresses each in turn.

### A. Injunctive Relief

Plaintiffs ask the court to issue an injunction that would require ADRU to allow patrons with service animals and also to adopt a specific non-discrimination policy. *See* ECF No. 10 at 3, Ex. A. The ADA, CDPA, and the Unruh act all authorize injunctive relief as a remedy. *See* 42 U.S.C. § 12188 (ADA); Cal. Civ. Code § 55 (CDPA); Cal. Civ. Code § 52(c)(3) (Unruh Act). Accordingly, based on the allegations, the undersigned finds that Plaintiffs have shown that a permanent injunction is appropriate. Thus, the court must determine the proper scope of the injunction.

Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006).

Plaintiffs propose an injunction "requiring defendant ADRU CORP., a California corporation dba BURGER KING #15775 to comply with the disability access requirements of the ADA by allowing patrons with service animals, and adopting the policy attached hereto as Exhibit A." Notice of Motion, ECF No. 10 at 3. The attached policy statement declares that ADRU "does not discriminate against persons based upon their sex, race, color, religion, ancestry, national origin or disability." ECF No. 10 at 5. It also states that ADRU "recognize[s], understand[s] and support[s]"

policies including that (1) "all persons are free and equal, and . . . entitled to the full and equal accommodations . . . in all business establishments," (2) "individuals with disabilities shall be entitled to full and equal access" to a broad public places, (3) ADRU "adopt[s] the definitions of service animals, guide dogs, signal dogs and service dogs as defined under federal or state law." *Id.* at 5-7. In addition, ADRU "recognize[s], understand[s], and want[s] every employee" to be aware of potential criminal penalties for interfering with a disabled person in the exercise of rights related to service animals. *Id.* at 7. Finally, the proposed policy indicates that ADRU will post signs stating "Service Animals Welcome," incorporate the proposed policy into any employee manual it distributes, post it in a conspicuous place for all employees to see, and have the employees sign an affirmation with similar language. *Id.* at 8.

The undersigned finds this language overly broad because it goes far beyond enjoining the offending conduct previously described in this Order and would require ADRU to adopt Plaintiffs' opinions. The other issue is that Plaintiffs' allegations do not establish that ADRU, a Burger King franchise, does not have an ADA policy.

Instead, the injunction should be narrowly tailored to the specific harms at issue here. *See* ECF No. 10 at 3. The undersigned therefore recommends that the district court issue the permanent injunction provided below, which is based on the U.S. Department of Justice ADA regulations.

### B. Statutory Damages Under the Unruh Act

In addition to injunctive relief, Plaintiffs seek damages under the Unruh Act. *See* Motion, ECF No. 10-1 at 4-5. As discussed above, the Unruh Act allow a Plaintiff to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52(a).

Here, Plaintiffs originally requested damages of $20,000 for Ms. Ascencio and $9,500 for Ms. Allen. ECF No. 10-1 at 5. Plaintiffs' papers provide no explanation for how they arrived at the requested damages amount. *See generally* Motion, ECF No. 10-1 at 4-5; Ascencio Decl., ECF No. 10-2; Allen Decl., ECF No. 10-3; Frankovich Decl., ECF No. 10-4. At the December 19, 2013 hearing, Plaintiffs' counsel reduced the damages request to statutory damages of $4,000 per Plaintiff and represented that his clients waived any damages beyond the statutory amount. The court agrees

that this is appropriate and RECOMMENDS the district court award Ms. Ascencio and Ms. Allen statutory damages of $4,000 each.

**C. Costs and Attorney's Fees Under the ADA and the Unruh Act**

Finally, Plaintiffs ask the court to award them attorney's fees and costs in the amount of $12,432. Attorney's fees are available under the ADA and the Unruh Act. The ADA permits the court "in its discretion" to award attorney's fees and costs to the "prevailing party." 42 U.S.C. § 12205; *Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir. 2002). The Unruh Act similarly permits an award of attorney's fees to a prevailing party. Cal. Civ. Code. §§ 52, 54.2, 55.

California state and federal courts use the lodestar method to determine a reasonable fee award. *See Ketchum*, 24 Cal. 4th at 1131; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. The court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Ketchum v. Moses*, 24 Cal.4th at 1132.

Here Plaintiffs seek an award of $11,864 in fees for their attorneys and paralegals, broken down as follows:

| Name | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| T. Frankovich | 17.8 | $500 | $8,900 |
| G.S. Khoury | 13 | $190 | $2,470 |
| P. Maupin | 3.5 | $60 | $210 |
| A. Cooper | 7.1 | $40 | $284 |
| **Total** | | | **$11,864** |

Frankovich Decl. Ex. A, ECF No. 10-4 at 10. Mr. Frankovich submits a declaration providing support for the reasonableness of his and Mr. Koury's requested hourly rates. *Id.* ¶¶ 11-27. Based on the declaration and the court's knowledge of billing rates in the San Francisco area, the court finds

the attorneys' and paraprofessionals' hourly rates to be reasonable. Counsel also provide contemporaneous billing records supporting the reasonableness of the number of hours worked. *See id.* At 12-17. Having reviewed the records, the court finds the number of hours reasonable. Accordingly, the undersigned RECOMMENDS the district court award Plaintiffs' attorney's fees in the amount of $11,864.

Finally, Plaintiffs request costs of $568. *See* Frankovich Decl. ¶ 10. The costs requested are reasonable, and the court RECOMMENDS awarding them to Plaintiffs.

## CONCLUSION

For the above reasons, the court **ORDERS** that the case be reassigned to a district court judge and **RECOMMENDS** that the district court **GRANT** plaintiff's motion for default judgment and award damages of $4,000 to Ms. Ascencio, $4,000 to Ms. Allen, $11,864 in attorney's fees, and $568 in litigation costs and expenses. The court also **RECOMMENDS** that the district court issue a permanent injunction as follows:

> Defendant ADRU Corporation, a California corporation doing business as Burger King franchise # 15775, must permit service dogs[6] to accompany people with disabilities in all areas of the facility where the public is normally allowed to go, unless the dog is creating a disturbance and the animal's handler does not take effective action to control it, or the dog is not housebroken. When it is not obvious what service an animal provides, staff may ask only two questions: (1) is the dog a service animal required because of a disability; and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Plaintiffs must serve a copy of thie order and recommendation on ADRU.

---

[6] Beginning on March 15, 2011, only dogs are recognized as service animals under titles II and III of the ADA. *See* U.S. Department of Justice Revised Final Regulations (available online at http://www.ada.gov/service_animals_2010.htm. These regulations and similar cases are the basis for the proposed injunction.

**IT IS SO ORDERED.**

Dated: December 19, 2013


LAUREL BEELER
United States Magistrate Judge